OPINION
Appellants, Patricia Dull (individually referred to as "Dull") and the Ohio Association of Public School Employees, Local 662 (individually referred to as the "Union"), appeal from a judgment of the Trumbull County Court of Common Pleas vacating an arbitration award against appellee, the McDonald Local School District ("McDonald Local" or "school"). For the reasons that follow, we reverse the judgment of the trial court and reinstate the arbitration award.
The Union is the collective bargaining representative for the full time and short hour employees who are regularly assigned to a work schedule at McDonald Local with respect to the following positions: custodial personnel; food service personnel; secretaries; school bus drivers; and education aides. Pertinent to this appeal, the Union and McDonald Local were parties to a collective bargaining agreement (the "contract" or "CBA") for the term September 1, 1996, through August 31, 1998. The CBA provided for a series of grievance procedures from which to resolve disputes that arose under the contract. The final step of the grievance procedure was binding arbitration. On April 16, 1997, an arbitration hearing was conducted to resolve a dispute that had arisen between one of the Union's members, Dull, and the school.
Before proceeding with the facts that form the basis of this appeal, we note that McDonald Local failed both at the trial court level and here, to provide a transcript or suitable alternative of the proceedings held before the arbitrator. This court has previously held that "the failure to provide a transcript cannot be waived, and that it would be plain error for the common pleas court to base its decision upon any recitation of the facts by the parties which are not in conformance with App.R. 9." ClevelandConstr. Interiors, Inc. v. Ruhlin Co. (Apr. 5, 1991), Lake App. No. 90-L-14-060, unreported, at 6; Chester Twp. v. Fraternal Orderof Police, Ohio Labor Council, Inc. (1995), 102 Ohio App.3d 404,408. Consequently, we are constrained to review the arbitration award based solely on the record of the arbitration proceeding and those facts as contained in the arbitrator's decision.
The arbitrator's decision, dated May 26, 1997, contains the following relevant facts. On or about November 19, 1996, Dull was notified that McDonald Local was seeking an assistant cook for the school's cafeteria. At that time, Dull was employed as a bus driver for the school. Because Dull's position with McDonald Local only consisted of half-day work hours and, thus, only half-time benefits, she decided to apply for the assistant cook position that would provide her with an increase in work hours and benefits. The description of the duties expected to be performed of the assistant cook were as follows:
"TITLE: ASSISTANT HEAD COOK
 "QUALIFICATIONS: Demonstrated aptitude for successful completion of performance responsibilities.
"REPORTS TO: Head Cook
"SUPERVISES: Kitchen Helpers/Students
 "JOB GOAL: Assist in preparing and serving meals for students and staff with a variety of good tasting and nourishing food.
"PERFORMANCE RESPONSIBILITIES:
 "1. Assist in the preparation and serving of food and general cleanliness of the kitchen area.
 "2. Be responsible for baked products such as breads, cakes and cookies, or other preparations as assigned.
 "3. Serve at serving counter during serving periods, sell extra food.
 "4. Clear and clean food area after serving; assist in putting away unused food.
 "5. Assume responsibility of head cook in case of illness or emergency.
 "6. Take daily receipts and fill out daily participation forms as necessary if assigned by head cook.
 "7. Make an effort to assist personnel for special activities in the building or district.
 "8. Perform such other tasks as from time to time may be assigned by the head cook or administration.
 "TERMS OF EMPLOYMENT: Salary and work year to be established by the Board.
 "EVALUATION: Performance of this job will be evaluated in accordance with provisions of the Board's policy on Evaluation of classified personnel.
 The school's superintendent interviewed appellant and three other persons for the position of assistant cook. Dull was the only one of the four interviewees that had not previously worked in the school's cafeteria. However, appellant was the only applicant that was a member of the bargaining unit. The other three interviewees, while previously working in the school's cafeteria, were substitutes and not members of the bargaining unit. The CBA entered into between the Union and McDonald Local contained the following language at Article I, Item C of the contract:
 "A School Employee shall receive first consideration on any position opening. However, final selection will be based on the qualifications of the candidates, as determined by the board."
McDonald Local ultimately did not award Dull the position of assistant cook. Dull then proceeded through the series of contractual grievance procedures alleging that she was not given first consideration for the job as required under the terms of the CBA. The school responded to the grievance by alleging that it complied with the terms of the CBA because Dull was, in fact, the first person interviewed for the job. The matter eventually proceeded to binding arbitration.
The arbitrator determined that Dull was sufficiently qualified to hold the position of assistant cook. The arbitrator noted that Dull had been a housewife for thirty years, catered graduations and weddings, and had prior work experience in various cafeterias. From the record before us it is apparent that no evidence was presented as to the qualifications of the other candidates for the job. The arbitrator also made the following relevant factual determinations:
 "The evidence revealed that the superintendent did all of the interviews; that the Board of Education did not interview anyone; that the Board of Education followed the recommendation of the superintendent; that the superintendent interviewed the grievant for approximately ten minutes; that the interview did not concern itself with any of the duties mentioned on the description of duties; that the superintendent requested of the head cook a recommendation that the recommendation of the head cook was followed by the superintendent; that the superintendent appeared before the Board of Education and made his recommendation and that the Board of Education rubber stamped the recommendation of the superintendent. The employer admitted that there were no interviews by the Board of Education and that the entire process relied upon the recommendation of the superintendent." (Emphasis added.)
 On the basis of this evidence, the arbitrator determined that McDonald Local violated the terms of the CBA by failing to determine the qualifications of the candidates for the assistant cook position as set forth in Article XIV, Item C of the contract. Instead, the arbitrator determined that the superintendent made the job determination, without any inquiry into Dull's ability to perform the duties of the assistant cook position, which the board subsequently "rubber stamped." As the board made no inquiry into Dull's qualifications for the position, and the only evidence before the arbitrator revealed that she was sufficiently qualified for the job, the arbitrator granted Dull's grievance and appointed her to the job as assistant head cook.
On June 6, 1997, McDonald Local applied to the Trumbull County Court of Common Pleas for an order vacating or modifying the arbitration award pursuant to R.C. 2711.10 and 2711.11. The school later argued that the arbitration award should be vacated for the following two errors that the arbitrator committed: 1.) issuing a decision based on the second sentence of Article XIV, Item C of the CBA when Dull only complained that she was not given first consideration for the assistant cook position pursuant to the first sentence of Article XIV, Item C of the contract; and 2.) reading into the CBA a requirement that the school board personally interview all the candidates for the position of assistant cook. On June 30, 1997, the Union and Dull responded to the school's allegations and requested that the trial court issue an order confirming the arbitrator's award. It is noted that both parties attempted to file supporting affidavits with the trial court, not submitted in the record of the proceedings before the arbitrator, in support of their arguments and in direct contravention of this court's holdings in Cleveland Const.Interiors and Chester Twp., supra.
By judgment entry filed April 6, 1998, the trial court determined that the arbitrator correctly included the entire paragraph of article XIV, Item C in basing his determination and award. However, the trial court did give credence to McDonald Local's second argument. Namely, that the arbitrator imposed an additional requirement upon the school board, not found in the CBA, to personally interview all of the applicants for job openings. The trial court further found that the arbitrator interpreted Article XIV, Item C "to mean that if an employee applied for a posted position, that employee should be granted the job regardless of his or her qualifications." From this judgment, appellants filed a timely notice of appeal and now raise the following three assignments of error:
 "[1.] The common pleas court erred to the prejudice of Appellants in vacating the arbitration award because the court reviewed, over objection, an incomplete record and received evidence on the merits by means of an affidavit, and relied upon both types of evidence to vacate the award when R.C. 2711.10
makes no provision for the receipt of such evidence.
 "[2.] When there are two reasonable interpretations of a collective bargaining agreement, the common pleas court errs to the prejudice of Appellants and exceeds its limited authority of review when it substitutes its judgment on the merits of the dispute for that of the arbitrator where the arbitrator's award is not arbitrary, capricious, or unlawful.
 "[3.] The common pleas court erred to the prejudice of appellants in granting Appellee's motion to vacate the award and in denying Appellants' motion to confirm the award and enter judgment thereon because: (A) the arbitrator did not exceed his powers of authority; (B) the award drew its essence from the CBA; (C) the award did not conflict with any express terms of the CBA and is rationally derived therefrom; and the common pleas court imposed upon the parties a contractual obligation that they did not impose upon themselves."
 Because appellant's third assignment of error is dispositive of this appeal with respect to the trial court's decision to vacate the arbitrator's award, we will address this argument before disposing of appellants remaining assignments of error.
The Supreme Court of Ohio has previously determined that in order for binding arbitration to survive as a viable alternative to litigation, the scope of judicial review must be limited:
 "At common law, the courts have almost uniformly refused to vacate an arbitrator's award because of an error of law or fact. It has been held that the arbitrator is the final judge of both law and facts, and that an award will not be set aside except upon a clear showing of fraud, misconduct or some other irregularity rendering the award unjust, inequitable, or unconscionable * * *, and that even a grossly erroneous decision is binding in the absence of fraud." (Citations omitted.) Goodyear v. Local Union No. 200 (1975), 42 Ohio St.2d 516, 522.
 Consistent with the Supreme Court of Ohio's pronouncement, R.C. 2711.10 severely limits the scope of judicial review and states that a binding arbitration decision may only be vacated for certain reasons including, in pertinent part, the following:
 "(D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."
 In the context of labor relations, the Supreme Court of Ohio has offered the following guidance as to whether the arbitrator exceeded his or her authority pursuant to R.C. 2711.10:
 "[T]he United States Supreme Court cautioned that `* * * an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.' [quoting United Steelworkers of America v. Enterprise Wheel Car Corp., (1960), 363 U.S. 593,] at 597. Thus, we will accord considerable latitude to an arbitrator, but we recognize his powers are not unlimited in the resolution of labor disputes. `The arbitrator is confined to the interpretation and application of the collective bargaining agreement, and although he may construe ambiguous contract language, he is without authority to disregard or modify plain and unambiguous provisions.' Detroit Coil Co. v. Internatl. Assn. Of Machinists Aerospace Workers, Lodge No. 82 (C.A.6, 1979), 594 F.2d 575, 579; * * *. Accordingly it is our duty to determine whether the arbitrator's award was reached in a rational manner from the collective bargaining agreement." Ohio Office of Collective Bargaining v. Ohio Civil Service Employees Assn., Local 11, AFSCME, AFL-CIO (1991), 59 Ohio St.3d 177, 179-180.
 In this case, the trial court agreed with the school's arguments that the arbitrator exceeded the scope of his authority by requiring the McDonald Local school board to personally interview each candidate for the position of assistant cook. The trial court further disagreed with the arbitrator's interpretation of Article XIV, Item C to mean that if an existing school employee applied for a posted position, that employee must be given the job.
If the arbitrator had read either one of these provisions into the CBA, we may very well have agreed with the trial court's assessment that the arbitrator created his own contract rather than applying the CBA as agreed upon by the parties. However, upon review of the limited record before us, we cannot agree with the trial court's conclusion that the arbitrator held the parties to either one of these two provisions. The arbitrator made no reference in his opinion that Dull should be granted the assistant cook position simply because of her existing relationship with the union as a regularly scheduled employee at the school. The limited record before us also does not support the conclusion that the arbitrator read a provision in the contract requiring the school board to personally interview all candidates for the assistant cook position.
In his decision, the arbitrator noted that the position of assistant cook required an individual who could demonstrate aptitude for successful completion of several performance responsibilities. According to the arbitrator's finding, the evidence established that no one, neither the superintendent nor the school board, ever questioned appellant as to her ability to complete these performance responsibilities. Instead, the superintendent based his recommendation based on a conversation he had with the head cook, a person who had not worked with Dull, as to whom the school should hire for the assistant cook position. Article XIV, Item 4 required that Dull receive first consideration for the position, while recognizing that the employment decision would ultimately be based on the qualifications of the candidates as determined by the school board. Although Dull may have been the first person interviewed for the job, she effectively received no consideration when the interviewer declined to question the candidates based on their ability to complete the performance responsibilities for the job as set forth in the CBA. The arbitrator's decision strongly indicates that the school had already determined whom it would hire for the vacant position regardless of the results of the interviews that were conducted of the candidates. Consequently, the school board, which ultimately relied on the recommendation of the head cook as related by the superintendent, had no basis from which to determine the qualifications of all the candidates.
We recognize that as the arbitrator wrote the facts of this case, he noted that the school board did not conduct any interviews as to the qualifications of the candidates based on the performance responsibilities listed for the assistant cook position. These statements might support appellee's contention that the arbitrator required the school board to personally conduct the interviews of the candidates for the assistant cook position, a task that appellee argues the school board would be ill prepared to perform for every hiring decision. However, the arbitrator's decision is also susceptible to an alternative explanation as set forth above. Namely, that no one interviewed Dull with respect to her qualifications to subsequently enable the school board to make an informed hiring decision based on the candidates' qualifications as required under the CBA. As the Supreme Court of Ohio recognized in Goodyear, 42 Ohio St.2d 516, at paragraph one of the syllabus:
 "A mere ambiguity in the opinion accompanying an arbitration award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for vacating the award when such award draws its essence from a collective bargaining agreement."
 Based on appellee's failure to provide this court with a transcript of the proceedings before the arbitrator, and our unwillingness to consider evidentiary materials that were not presented to the trier of fact, we cannot hold that the arbitrator exceeded the scope of his authority by ruling in Dull's favor under the circumstances of this case. The arbitrator's decision draws its essence from the CBA and is not otherwise arbitrary, capacious, or unreasonable. Thus, the trial court erred in vacating the arbitrator's decision. Appellant's third assignment of error has merit.
Based on our resolution of appellant's third assignment of error, appellant's other two assignments of error are rendered moot pursuant to App.R. 12(A)(1)(c).
Accordingly, the judgment of the trial court is reversed and the arbitrator's award reinstated. Costs are assessed to appellee.
JUDGE WILLIAM M. O'NEILL
CHRISTLEY, P.J., concurs with Concurring Opinion, NADER, J., concurs.